## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| Terry | Civil Action No.  18-cv-01508 |
| Versus | Judge Michael J Juneau |
| Acadiana Concern For Aids Relief Education And Support Inc DBA Acadiana CARES | Magistrate Judge Carol B Whitehurst |

## REPORT AND RECOMMENDATION

Before the Court, on referral from the district judge, is a Motion To Dismiss Acadiana Concern For Aids Relief Education and Support, Inc. D/B/A Acadiana C.A.R.E.S. ("Acadiana C.A.R.E.S.") [Rec. Doc. 12] and a Memorandum in Opposition filed by Plaintiff, Gale E. Terry ("Terry") [Rec. Doc. 14]. Acadiana C.A.R.E.S.  previously filed a motion to dismiss on January 18, 2019. *R. 4*. On February 8, 2019, Plaintiff filed a Consent Motion to File a Supplemental Amending and Restated Complaint ("amended complaint"). *R. 11*. In granting the Consent Motion to file the amended complaint, the Court denied the motion to dismiss without prejudice allowing Defendant to re-urge a motion to dismiss if appropriate. *R. 10*. The Court will consider Defendant's second Motion To Dismiss as follows.

## I.    FACTUAL BACKGROUND

Louisiana, through its Department of Health, established a STD/HIV Program ("SHP") to assist in STD/HIV prevention and to monitor disease trends. Louisiana,

through the SHP, contracts with regional facilities to accomplish its mission. Acadiana C.A.R.E.S. is a non-profit corporation that holds a long-time contract with Louisiana through the SHP. *R. 11, ¶¶2, 4.* Acadiana C.A.R.E.S. employs Field Surveillance Epidemiologists to collect and report on HIV/AIDS cases in Louisiana. On January 2, 1991, Plaintiff became employed with Acadiana C.A.R.E.S. as a Field Surveillance Epidemiologist. Plaintiff was assigned to Baton Rouge originally and subsequently New Orleans and the North Shore. She is currently assigned to Regions II, IX.

On or about July 31, 2017, Susan Brodie was assigned to supervise the Field Surveillance Epidemiologists. *Id. at ¶7.* Brodie had "immediate and successively higher authority" over Plaintiff. *Id.* Plaintiff was 72 years old at the time. *Id. at ¶8.* Plaintiff alleges that on August 10, 2017, Brodie inquired about her age and when she was going to retire. *Id.* At that time Brodie told Plaintiff how much her mother enjoyed her retirement. *Id.* On April 12, 2018, her second visit to Plaintiff's office in Slidell, Brodie again talked about her mother's contentment with retirement. *Id.* Plaintiff further alleges that Brodie continued to make inquiries regarding Plaintiff's retirement. *Id.*

Plaintiff also alleges that shortly after she became her supervisor, Brodie began requesting that she collect and report protected health information, including reasons for testing and diagnosis of all persons that were administered an HIV test,

2

even those that were found to be HIV negative. Plaintiff told Brodie that she could not provide the information because it would violate HIPAA, Louisiana's Sanitary Code, and other privacy laws/rights. *R. 11, at ¶11*. She alleges that Brodie threatened her with the loss of her job if she did not provide the information. *Id. at ¶12.*

Plaintiff alleges she continued to refuse to comply with the aforementioned requests and also continued to complain about Defendant's "unlawful treatment because of her age." *Id. at ¶13*. In particular, on November 1, 2017, she sent an email to the CEO, Claude Martin, stating her intention to file a grievance related to her claims of age-based discrimination. *Id. at ¶15*. She further alleges another similarly situated co-employee, Gayle Norris, had an in-person meeting with various officials with the Louisiana Office of Public Health. *Id.* On November 2, 2017, the Louisiana Office of Public Health Regional Medical Director/Regional Administrator, Region VII, OPH, Dr. Martha Whyte, responded by email to Plaintiff, Brodie, and Brodie's supervisor, Jessica Fridge, regarding Brodie's orders. *Id.*  On November 3, 2017, Brodie sent an email to Plaintiff and Norris stating that, after review of Dr. Whyte's email, "the management" of the HIV/STD Program, Dr. DeAnn Gruber, Director of the HIV/STD Program, Chaquetta Johnson, NP, and Jessica Fridge, Surveillance Manager, "need to discuss what you truly understand and what is expected in proper documentation and investigation .... on November 6, 2017. *Id. at ¶16.*

3

Plaintiff alleges that thereafter Brodie ordered her to obtain HIPAA protected information on individuals who were not HIV positive and then enter that person's information into the database. *Id. at ¶17.* Plaintiff alleges such an order was in violation of Federal and Louisiana law, including La. Const. Article 1, § 5, "Right to Privacy", La. Civ. C. Article 2315, invasion of privacy, La. R.S. 40:4 et seq., Sanitary Code, La. R.S. 40:1165.1, "Health Care Information Records", and La. R.S. 40:1171.1 *et seq.*, "Confidentiality of HIV Test Results." *Id.*

On November 15, 2017, Defendant issued a Bulletin to Plaintiff and her co-workers giving examples of the information it wanted gathered and logged into the database. *Id. at ¶18.* Plaintiff alleges the order was for employees to use their "State credentials to essentially force medical personnel to identify the specific non-HIV condition of their patients" in order for Defendant to collect and report information on HIV negative individuals and children on Prep (a pre-exposure prophylaxis medication for HIV negative persons),  including the PrEP start date, if available, the sexual orientation of the individual, and other risk information regarding the individual. *Id. at ¶27.* Plaintiff states she ceased entering such information on PrEP based on HIPAA and Louisiana's privacy law. *Id. at ¶18.*

On December 4, 2017, Plaintiff filed a formal grievance based on age discrimination and whistle-blower reprisal retaliation. Also on that date, Acadiana C.A.R.E.S. placed Plaintiff on a supervisory plan/probation through June 2, 2018,

4

pending her termination. *Id. at ¶¶19, 20.* Plaintiff alleges that as a result of her grievance, she was required to attend a meeting with Gruber and Johnson on December 18, 2017. *Id. ¶22.* During the meeting, Gruber and Johnson refused to discuss Brodie's requests for the allegedly unlawful information. *Id.* By letter dated December 22, 2017, they held that the supervisory plan would be upheld. *Id.*

Thereafter, Defendant continued to require Plaintiff to perform the aforesaid investigations. *Id. at ¶24.* Following her refusals to perform the investigations, Plaintiff alleges she was further harassed by Defendant. *Id. at ¶25.* Plaintiff alleges she was ordered to drive from her residence in Mississippi each morning, clock in at the Slidell office, and then service her territory at a far different location than the Slidell office. *Id. at ¶¶ 26, 29.* Plaintiff characterizes her retaliatory and age-based harassment resulting from Defendant's repeated requests to force the investigations as "grave." *Id. at ¶29.* As a result she requested a reduced, thirty (30) work schedule, which under Defendant's policy, allowed her to remain a full-time employee and receive full-time benefits. Brodie refused her request even though she alleges others similarly situated (except they did not complain about the "unlawful" conduct) had been granted the same. *Id.* She alleges Defendant's refusal was out of retaliation and done in reprisal for refusing, protesting and reporting the unlawful actions at issue to her employer and the State of Louisiana. *Id. at ¶30.*

5

On July 26, 2018, Plaintiff filed Charges of Discrimination with the EEOC and LCHR. *Id. at ¶¶9, 10; 12-2*. She was issued a Right To Sue letter from the EEOC on September 5, 2018. Thereafter, she filed the instant action on November 19, 2018. *R. 1*. Plaintiff alleged a claim for age-based harassment and retaliation under the ADEA as well as a State based claim under 23:967, the Louisiana Whistleblower Statute,  as she was "placed on a supervisory plan pending termination, threatened, punished, and denied a reduced work schedule because of her age and protected activities." *R. 14, p. 7*.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 678.

A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the

elements of a cause of action. *Id*. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand,* 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## III.    DISCUSSION

### A. AGE DISCRIMINATION (ADEA)

Plaintiff sets forth claims of discrimination/harassment and retaliation under the ADEA. She alleges that she was the target of age-based discrimination, harassment, hostile work environment and retaliation by her direct supervisor, Brodie, and other supervisors at Acadiana C.A.R.E.S.. Acadiana C.A.R.E.S. contends that Plaintiff's allegations as to her ADEA claims are "purely conclusory and fail to nudge her ADEA claims across the line from conceivable to plausible." *R. 12-1, p. 9.*

### 1. *Failure to Exhaust*

In its motion Acadiana C.A.R.E.S. initially contends that Plaintiff failed to exhaust her administrative remedies in that she did not describe each discrete act of discrimination in the charge. Specifically, it argues that she did not discuss having to "clock in" for work or the denial of her request to work a reduced schedule. In

support of its argument, Defendant points to the Charge of Discrimination that Plaintiff filed with the EEOC, which is attached to Defendant's Motion as Exhibit 1. *R. 12-2*. The Court considers this exhibit part of the pleadings because it directly relates to the charges made in the amended complaint and the right to sue letter attached. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]").

To bring a claim under the ADEA, a plaintiff must first exhaust her administrative remedies. *Julian v. City of Houston, Tex.*, 314 F.3d 721, 725 (5th Cir. 2002). To properly exhaust their administrative remedies, the employee must file a charge with the EEOC. *See Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). The primary purpose of this exhaustion requirement is to trigger both the investigatory and conciliatory procedures of the EEOC, in attempt to reach a non-judicial resolution of the alleged discrimination. *See id.* at 789.

While the Fifth Circuit does not require a plaintiff to check a certain box, recite specific language, or allege a [prima face] case before the EEOC, it does expect that after a "somewhat [broad]" reading of the charge, it can reasonably identify claims expected to grow from the charge. *See id.* at 792. The claims expected to reasonably grow from the charge set the scope of the plaintiff's complaint. *See*

8

*Clayton v. Rumsfeld*, 106 Fed. Appx. 268, 271 (5th Cir. 2004). In other words, the scope of a plaintiff's complaint is limited by the scope of their EEOC charge. *See id*. If plaintiffs were allowed to go beyond the scope of their charges, the primary purpose of the exhaustion requirement would be circumvented, and the charged party would be deprived of notice. *See id*.

The crucial element of a charge of discrimination is the factual statement contained therein. *Sanchez v. Standard Brands, Inc*., 431 F.2d 455, 462 (5th Cir.1970). Next, the administrative charge must be viewed in its broadest reasonable sense in order effectively to attempt to eliminate, by the administrative process, possible discriminatory practices and policies. *Id*. at 467. One of the central purposes of the charge is to put the employer on notice of the existence and nature of the charges. *Manning v. Chevron Chem. Co*., 332 F.3d 874, 878-89 (5th Cir.2003).

In the Charge of Discrimination, Plaintiff checked the boxes for discrimination based on race, retaliation, and age. Defendant contends that Plaintiff failed to exhaust her age and retaliation claims. In that regard, Plaintiff alleged that after she filed a grievance regarding her supervisor's actions, including those of age discrimination, she suffered harassment and retaliation by being placed on a 6-month supervisory plan without explanation. After the probation period ended, she never received documentation indicating she was removed from probation. As to her allegations that she was required to "clock in" for work at the office and denied a

request to work a reduced schedule in retaliation for her repeated protests, *Id. at ¶¶20, 28, 29*, the Court finds that these claims are reasonably within the scope of Plaintiff's EEOC charge of age discrimination/harassment and retaliation.[1] *See Sanchez*, 431 F.2d at 466–67 ("the Commission will seek relief from those unlawful employment practices which are like or related to the charge filed with the Commission and which grow out of proceedings before the Commission").

Therefore, Defendant's claim for failure to exhaust administrative remedies will be denied.

### 2. *Discrimination/Harassment Claims*

The ADEA provides that "it shall be unlawful for an employer... (1) to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or to tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age. . . ." 29 U.S.C. § 623(a)(1).

When a plaintiff alleges age discrimination, "liability depends on whether the protected trait actually motivated the employer's decision." *Reeves v. Sanderson*

---

[1] The Court finds Defendant's reliance on *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir.2003) misplaced. In that case the plaintiff's claim relied on the continuing violation doctrine which the Supreme Court abrogated in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), instead generally requiring that each discrete incident of discriminatory or retaliatory treatment constitutes its own unlawful employment practice.

*Plumbing Products, Inc*., 530 U.S. 133, 141 (2000). More specifically, the individual's age must have "actually played a role in [the employer's decision making] process and had a determinative influence on the outcome." *Id*. at 141. Therefore, by a preponderance of the evidence, the plaintiff must prove that age was the "but-for" cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

A plaintiff may prove her case by direct or circumstantial evidence. *Reeves*, 530 U.S. at 141. Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, as in this case, the Fifth Circuit has applied a more flexible two-part test. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir.2000). In that circumstance, a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker. *See Laxton v. Gap*, 333 F.3d 572, 583 (5th Cir.2003) (citing *Russell*, 235 F.3d at 226).

The ADEA prohibits an employer from taking adverse action against its employee because of the employee's age. *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 170 (2009); 29 U.S.C. § 623(a). It also creates a cause of action for hostile work environments based on age discrimination. *Dediol  v. Best Chevrolet, Inc*., 655 F.3d 435, 441 (5th Cir. 2011). To establish a prima facie case of discriminatory treatment

11

based on age, the claimant must prove "that (1) she was over the age of 40; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer." *Id.* A plaintiff need not allege a prima facie case to state a plausible age discrimination claim. *Haskett v. Continental Land Resources, L.L.C.*, 668 Fed. Appx. 133, 134 (5th Cir. 2016). Nonetheless, the consideration of the elements is helpful in determining whether the plaintiff met the plausibility standard. *Id.*

In order to satisfy the third element of a prima facie case, a plaintiff must demonstrate that the harassment was objectively unreasonable. *Id.* A workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Dediol* at 441 (quoting *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir.2009)). Further, the complained-of conduct must be both objectively and subjectively offensive. *Id.* (citing *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir.2007)). This means that not only must a plaintiff perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person. *Id.* To determine whether conduct is objectively offensive, the totality of the circumstances is considered, including: "(1) the frequency of the discriminatory

12

conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.*

Plaintiff is over forty years old. Upon Brodie becoming her supervisor and "throughout her employment," Plaintiff alleges that Brodie repeatedly made age-based harassing derogatory comments about her, including inquiries into her age and plans to retire, and discussions about Brodie's retired mother and her contentment for retirement, retirement date, and hobbies/"independence." She alleges that she told Brodie that she had no intention of retiring and reported Brodie's comments to Acadiana C.A.R.E.S. as "age discrimination," to no avail. *Id.* She further alleges that one of her colleagues over the age of 65 and in Plaintiff's position "was forced out" because of her age. *Id.*

Plaintiff also alleges that shortly after Brodie was hired, she began requesting that Plaintiff investigate and provide to Brodie protected health information for all persons, including children less than 13 years of age, who had been HIV tested with negative results. *Id. at ¶11.* Plaintiff alleges that after she refused because it violated federal HIPAA and Louisiana state law, one of her colleagues was terminated due to her refusal to violate HIPPA. *Id.* She alleges she complained to Brodie and Brodie's supervisor as well as Defendant's CEO. She further alleges Defendant made threats regarding her job and threats of "severe repercussions," imposing an

involuntary supervisory plan/probation pending termination, denying a reduced work schedule, and imposing a "clock in" punishment, all because of her age—72.

The totality of the circumstances underlying Plaintiff's allegations, including Brodie's repeated ageist comments as well as her demands and employment-threatening actions taken against Plaintiff and her colleagues, created an objectively intimidating or hostile work environment and demonstrates a prima facie case for age discrimination. *See Rachid v. Jack In The Box, Inc*., 376 F.3d 305, 313 (5th Cir. 2004). While an employer "may make reasonable inquiries into the retirement plans of its employees," it remains the case that "retirement inquiries can sometimes be so unnecessary and excessive as to constitute evidence of discriminatory harassment." *See Montgomery v. John Deere & Co.*, 169 F.3d 556, 560 (8th Cir. 1999); *Guthrie v. J.C. Penney Co., Inc*., 803 F.2d 202, 208 (5th Cir. 1986). Here, the Court cannot conclude that the repeated retirement inquiries allegedly made by Acadiana C.A.R.E.S. management and/or supervisory individuals were not "unnecessary and excessive."

Defendant cites *Moody v. United States Sec'y. of Army*, 72 Fed.Appx. 235 (5th Cir. 2003), *Ogden v. Brennan*, 657 Fed.Appx. 232 (5th Cir. 2016), *Reed v. Neopost USA, Inc*., 701 F.3d 434 (5th Cir. 2012) and *Jackson v. Honeywell Intern., Inc*., 601 Fed.Appx. 280, 288 (5th Cir. 2015) in support of grant of dismissal. These cases, however, are distinguishable in that each court considered the evidence under the

14

summary judgment standard of Rule 56 rather that Rule 12(b)(6) as in this case. Moreover, in each case the evidence was limited to comments which the court found were not severe or pervasive enough to have created a hostile environment. Here, the totality of the circumstances includes repeated harassing comments regarding age as well as threatening and intimidating actions by Plaintiff's supervisors.

### 3. *Plaintiff's Claim of Retaliation Under the ADEA*

Plaintiff also alleges that Defendant retaliated against her for filing EEOC/LCHR Charges of Discrimination. To establish a prima facie retaliation claim under the ADEA, the claimant must show "(1) that she engaged in a protected activity, (2) that there was an adverse employment action, ... (3) that a causal link existed between the protected activity and the adverse employment action" and (4) that she was qualified to hold the position. *Wooten v. McDonald Transit Ass'n. Inc.*, 788 F.3d 490, 496-497 (5th Cir. 2015). Again, consideration of the prima facie framework is helpful, but not determinative, in assessing whether Plaintiff pled a plausible cause of action.

Defendant contends that "courts have consistently held that a claimant's placement on a supervisory plan [also known as "PIP"] is not an adverse employment action." *R. 12-1, p. 11*. Plaintiff retorts, citing the prevailing standard to demonstrate "retaliation" set out by the United States Supreme Court in *Burlington Northern & Santa Fe Ry. Co. v. White*. There, the Court redefined an

"adverse employment action" to include actions by an employer that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 548 U.S. 53, 68 (2006). Based on the Supreme Court's ruling, Plaintiff argues that the retaliatory acts she alleges "are far more encompassing than discriminatory acts."

More recently, the court in *Kraft v. University of Texas Medical Branch* specifically addressed whether a PIP can be a materially adverse action on which a plaintiff may base his retaliation claim. The court stated:

> In the retaliation context, the Fifth Circuit has stated that a performance improvement plan ("PIP") might be the kind of "materially adverse action" on which a plaintiff may base his retaliation claim. *Ray v. Tandem Computs., Inc.*, 63 F.3d 429, 435 (5th Cir. 1995) (holding that PIP and termination of employment were adverse employment actions); *see also Pollak v. Lew*, 2013 WL 1194848, at *9 (S.D. Tex. Mar. 22, 2013), aff'd, 542 Fed. Appx. 304 (5th Cir. 2013) (finding placement on a PIP could dissuade a reasonable employee from engaging in protected activity). But, "written warnings and unfavorable performance reviews are not adverse employment actions where colorable grounds exist for disciplinary action or where the employee continues to engage in protected activity." *Jackson v. Honeywell Int'l, Inc.* 601 Fed. Appx. 280, 286 (5th Cir. 2015) (citing *Burlington*, 548 U.S. at 68).

2018 WL 1210721, at *6 (S.D.Tex., 2018). *See also Armstrong v. Marathon Petroleum Company, LP*, 2018 WL 2976732, at *9 (S.D.Tex., 2018) (holding that placement on a PIP after plaintiff brought a discrimination complaint can be considered an adverse employment action); *Robin v. City of Frisco, Tex.*, 2017 WL 5483883, at *9 (E.D. Tex. Nov. 15, 2017) (holding that issuing a negative

16

performance evaluation and a PIP after plaintiff brought a discrimination complaint could support a retaliation claim); *Al-habash v. Raytheon Co*., 2016 WL 6155601, at *9 (E.D. Tex. Oct. 24, 2016) (holding that a plaintiff's "PIP could satisfy the second element of his prima facie case for retaliation" and a "PIP can support retaliation as a matter of law...."). After reviewing the above, the Court concludes that Plaintiff's placement on the supervisory plan/PIP can be considered an adverse employment action.[2]

The Court finds that Plaintiff's claims of discrimination,/harassment and retaliation under the ADEA survive the pleading stage.

### B. LOUISIANA WHISTLEBLOWER STATUTE (La. R.S. 23:967)

Initially, the Court will consider the fact that Plaintiff does not address in her Memorandum in Opposition to Defendant's pending Motion To Dismiss her claim under the Louisiana Whistleblower Statute. *R. 14, pp. 4-5*. Instead she purports to rely on her argument in the memorandum in opposition to Defendant's **first** Motion To Dismiss ("First Motion"). The record indicates Plaintiff filed a Supplemental,

---

[2] While not raised in Defendant's brief, the facts alleged indicate that Plaintiff can also demonstrate the third factor, a causal link between the protected activity and her placement on the PIP. "Temporal proximity between an employer's knowledge of protected activity and an adverse employment action can serve, in some instances, as indirect evidence of a causal link" to establish a prima facie case. *Al-habash*, 2016 WL 6155601, at *9 (citing *Strong v. Univ. Healthcare Sys., L.L.C*, 482 F.3d 802, 808 (5th Cir. 2007)). However, the proximity between the employer's knowledge and the adverse employment action must be very close. *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001). Here Plaintiff filed the formal grievance regarding her age discrimination and harassment on December 4, 2017 and Defendant issued the supervisory plan/probation (PIP) on the same day—December 4, 2017. *R. 11, ¶19, 20*.

Amending And Restated Complaint as well as a Motion for Leave to File Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss moving the Court to grant her leave to file her memorandum in excess of the Court's allowable page limit. [Rec. Doc. 9]. Plaintiff attached her *proposed* Memorandum in Opposition thereto. [Rec. Doc. 9-2]. Upon ruling that Defendant's First Motion was denied without prejudice based on Plaintiff's amended complaint, the Court also denied as moot Plaintiff's Motion For Leave to File her Memorandum in Opposition. Hence, while Plaintiff's Motion For Leave appears in the record as document 9, her Memorandum in Opposition is merely attached as a *proposed* document and has not been entered into the record. Now Plaintiff requests that the Court consider the unfiled, proposed document as her opposition brief related to her claims under the Louisiana Whistleblower Statute in the pending Motion to Dismiss. While counsel for Plaintiff is cautioned not to attempt to perform the work of the Clerk of this Court, the Court will order that the Clerk file into the record Plaintiff's Proposed Memorandum In Opposition, *R. 9-2*, as Plaintiff's Supplemental Memorandum in Opposition to Defendant's pending Motion To Dismiss.

## 1.  *Definition of Employer*

The Louisiana Whistleblower Statute provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal

work practices. *Accardo v. Louisiana Health Services & Indem. Co*., 943 So.2d 381, 383 (La.App. 1 Cir.,2006). Under the Whistleblower Statute, an employer may not retaliate against its employees who advise an employer of violations of law. La. R.S. 23:967. The Whistleblower Statute does not define "employer."

Defendant argues that the definition of "employer" found in La. R.S. 23:302 should apply to the Whistleblower Statute. Under Louisiana Revised Statute 23:302 an employer is defined in relevant part as:

> (2) "Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.... This Chapter shall not apply to the following:
>
> . . . .
>
>     (b) Employment of an individual by a private educational or religious institution or any nonprofit corporation....

La. R.S. 23:302.

Defendant argues that it is not an employer under Louisiana law by virtue of this statute because it is a nonprofit corporation, which is excluded from being an "employer" under La. R.S. 23:302(2)(b). Defendant cites Plaintiff's amended complaint in which she alleges "Acadiana C.A.R.E.S. [is] A Louisiana non-profit corporation domiciled in Lafayette, Louisiana." *R. 11, ¶2.* Plaintiff disagrees with

Defendant's position and argues that the definition of "employer" found in La. R.S. 23:302, Louisiana Employment Discrimination Law, does not apply to La. R.S. 23:967, the Whistleblower Statute. *R. 9-2.*

A number of federal courts applying Louisiana law have held that the definition of "employer" for purposes of the Louisiana Employment Discrimination Law ("LEDL") contained in La. R.S. 23:302(2) is applicable to Whistleblower claims under La. R.S. 23:967. With one exception, these cases are unpublished. The Fifth Circuit has not ruled on the issue. Nor has the Louisiana Supreme Court ruled on the issue of whether the LEDL law definition of "employer" is the correct definition to be applied to the whistleblower statute. Louisiana appellate courts are split on the issue.

One federal district court, however, declined to apply the LEDL definition of "employer" to Whistleblower Statute claims—*Knighten v. State Fair of La.*, 2006 WL 725678, at *1 (W.D.La. March 21, 2006)(Hicks, J.). In *Knighten*, the district court affirmed the opinions of two magistrate judges[3], stating,

> This Court declines to follow Defendant's reasoning and refuses to extend the definition of an employer in section 302 to section 967 when there is nothing more to support such an expansion than a nonbinding,

---

[3] On April 8, 2004, Magistrate Judge Roy Payne wrote the first Report and Recommendation in *Knighten* recommending that the definition of Section 302 not be used to define "employer" under Section 967. *Civil Action 5:03-1930, Rec. Doc. 16*. In December 2004, the case was reassigned to Magistrate Judge Karen Hayes who wrote the second Report and Recommendation on February 10, 2006, confirming Judge Payne's recommendation as to the definition of "employer" under Section 967. *Id. at Rec. Doc. 87.*

published federal district court opinion, two unpublished federal district court opinions, and a single Louisiana appellate court ruling that is, in turn, based on those unpublished federal district court opinions.

*Id.,* 2006 WL 725678, at *1. The court reasoned that "Section 302 is included in Chapter 3-A, Prohibited Discrimination in Employment [and] Section 967 is included in Chapter 9, Miscellaneous Provisions, Part III, Employee Protection from Reprisal; Prohibited Practices; Remedies. Noting that Section 302 evinces that its provisions apply only to "this chapter," the court stated "there was simply no linking language between the two sections." *Id.* Finally relying on legislative intent, the *Knighten* court held,

> If the Louisiana Legislature wished to carve out a nonprofit corporation exception for section 967, it could have easily done so with precise, narrowing language. Moreover, if the Louisiana Legislature intended for section 302's definition of an employer to be an overriding definition applicable to all statutes contained in Title 23, it could have easily eliminated the "this chapter" language in section 302. Rather than clear guidance from the Louisiana Legislature or binding precedent from the United States Court of Appeals, Fifth Circuit or the Louisiana Supreme Court, this Court is left with section 967's reference to "employer," a broad term with no hint of any exception. Thus, this Court declines to extend La. R.S. 23:302's definition of "employer" to the Louisiana Whistleblower Statute, La. R.S. 23:967.

*Id.*

Also in *Hunter v. Rapides Parish Coliseum Authority*, 158 So.3d 173, 178 (La.App. 3 Cir.,2015) the Third Circuit declined to extend the definition of employer in La.R.S. 23:302 to Chapter 9 and Section 967. In *Hunter*, as in *Knighten*, the State

Third Circuit considered the jurisprudence and jurisprudential history, the statutory interpretation and the legislative intent of La. R.S. 23:302 and La. R.S. 967. *Id.* at 178.  The court noted the district court's conclusion in *Knighten* that the language of Section 302 indicated the legislature intended to limit the application of the definitions therein to Chapter 3-A by: (1) stating the definitions in Section 302 are "For purposes of this Chapter;" (2) providing "The provisions of this Chapter shall apply only to;" and (3) further providing "This Chapter shall not apply to." *Id. at *6.* The court found that the *Knighten* court's conclusion was strengthened upon considering: (1) the purpose of Chapter 3–A is to prohibit discrimination; (2) the terminology contained in 23:302 limits its application to Chapter 3–A; (3) the intent of Section 967 is to provide a remedy to employees whose employers retaliate against them for exercising their individual right to report the employers' violations of state law, and (4) nothing in Chapter 9 or Section 967 indicates that the legislature intended to define employer for purposes of those provisions by the definition contained in Section 23:302. *Id.*

As the court in *Knighten* noted, all of the federal cases but one, *Langley v. Pinkerton's, Inc*., 220 F.Supp.2d 575 (M.D.La.2002), are unpublished opinions with no precedential value. No analysis was made in any of those cases including

*Langley.*[4] At most, prior unpublished opinion(s) without any analysis form the reasoning. *See Jones v. JCC Holding Co.*, 2001 WL 537001, *3 (E.D. La May 21, 2001)(citing *Dronet v. Lafarge Corp.*, 2000 WL 1720547 (E.D.La.2000); *Jackson v. Xavier Univ. of Louisiana* 2002 WL 1482756, at *6 (E.D.La. July 8, 2002)(citing *Jones*); *Myers v. BP America, Inc*., 2010 WL 3878920, at *2-3 (W.D. La., 2010)(citing *Langley, Jackson* and *Jones*); *Wilson-Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc.*, 2011 WL 6046984, at *2 (M.D. La. Dec. 6, 2011)(citing *Jackson*, *Jones* and *Langley*); *English v. Wood Group PSN, Inc.,* 2015 WL 5061164, at *10-11 (E.D.La.,2015)(citing *Dronet*); *Sebble v. NAMI New Orleans, Inc*., 2018 WL 929604, at *2 (E.D.La., 2018)(citing *Jackson*, *Jones*, *Meyers*, *Langley* and *Wilson-Robinson*); *Heintz v. Lawson*, 2019 WL 127057, at * 10 (E.D. La., 2019) (without citation or analysis); *Williams v. Franciscan Missionaries of Our Lady Health System, Inc*., 2019 WL 1370871, at *3 (M.D. La., 2019)(citing *Wilson-Robinson*).

The genesis of this perpetuated conclusion is the court's opinion in *Dronet*, 2000 WL 1720547. There, the plaintiff sued his employer and his individual supervisor. The supervisor moved to dismiss the §23:967 claim against him on the basis that he was not an employer within the meaning of the statute. The court

---

[4] In *Langley*, the court found that the defendant was not the plaintiff's employer because plaintiff received no compensation or benefits from the defendant. While the court cited *Jackson*  and *Jones*, it made no determination as to employer-status under those cases, merely citing them as dicta. *Langley*, 220 F.Supp.2d at 580.

initially considered La. Civ. Code art. 11, the Louisiana Civil Code provision that the "words of a law must be given their generally prevailing meaning." *Id. at \*1*. While this analysis supported that the supervisor was not an employer because he did not pay the plaintiff's wages, the court further considered La. Civ. Code art 13's instruction that "[l]aws on the same subject matter be interpreted in reference to each other." *Id. at \*2*. In consideration of related Louisiana statutes, the court looked to Fifth Circuit law holding that supervisors are not considered employers under Louisiana's anti-discrimination law, § 23:302. The court stated, "like the anti-discrimination law which prevents discrimination based on an employee's protected status, the Whistleblower Statute prevents employers from taking discriminatory actions against employees based on their protected activities."[5] *Id*. On the basis of these sources, the court reached the indisputable conclusion that a supervisor was not an employer under § 967.

The decisions relied upon by Defendant have attempted to extend *Dronet* to an unequivocal definition of "employer" under § 967. *Dronet*, however, did not hold that § 302 provides a statutory definition of "employer" that applies unconditionally to § 967. In *Jackson*, the first of these expanded decisions, the court looked beyond the basic definition of "employer" in § 302, instead relying on an *exception* to the

---

[5]  The Court disagrees that § 302 and § 967 are "similar statutes." While § 302 is considered "anti-discrimination" based on an employee's protected status, § 967 is considered "anti-reprisal" based on an employee's protected activities. Hence, the statutes are included in different Chapters.

24

definition which excluded a non-profit corporation as an employer. Such an expansive interpretation of *Dronet* has plagued the jurisprudence.

After thoroughly reviewing the jurisprudence, including the cases cited by the parties, the Court agrees with the reasoning of *Knighten* and *Hunter* in that the definition of "Employer" in §23:302 does not define "employer" for purposes of § 23:967. Section 967 is found in Chapter 9, Miscellaneous Provisions," and Section 302 is located in Chapter 3-A,"Prohibited Discrimination In Employment." § 23:967 does not define "employer." The definition of "Employer" in La. R .S. 23:302 is located in Chapter 3-A. The language of Section 302 clearly limits its terms to "this Chapter." Thus, when the legislature stated in § 302, "The provisions of this Chapter .... [and] This Chapter shall not apply...." to employment by a non-profit corporation, they were <u>not</u> addressing claims under § 967.[6] The doctrine of e*xpressio unius est exclusio alterius* (the explicit mention of one [thing] is the exclusion of another)[7], dictates that when the legislature specifically enumerates a series of things, such as the specific listing of employer violations of the law, the employee's rights against the employer and the related definitions, as in § 967, the legislature's omission of other items, which could have easily been included in the statute is deemed

---

[6] The Court further notes that the statement in § 302 that Chapter 3-A shall not apply to employment in a non-profit corporation does not alter the definition of employer found in that statute—it merely creates an exception to the scope of the Chapter.

[7] https://dictionary.findlaw.com/definition/expressio-unius-est-exclusio-alterius.html

intentional. *State Through Dept. of Public Safety and Corrections, Office of State Police, Riverboat Gaming Div. v. Louisiana Riverboat Gaming Com'n and Horseshoe Entertainment*, 655 So.2d 292, 302 (La.,1995). If the legislature intended for the definition found in Chapter 3-A to apply to all of Title 23, it could have drafted a definitions section applicable to it in its entirety.[8] If it intended for Chapter 3-A's definition to apply to Chapter 9, it could have easily reproduced the definition within Chapter 9 or easily stated such.

Finally, as the court concluded in *Guy*, "using the Louisiana jurisprudential 'control' test, [the plaintiff] has alleged facts that would support a finding that the [defendant] is an employer that is not entitled to benefit from the exclusionary language found in La. R.S. 23:302(2) [because it was a non-profit employer]." *Id. at *4.*

2.  **Actual Violation of State Law**

The Louisiana Whistleblower Statute states:

An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

---

[8]  LEDL's definition of "Employer" under § 23:302 was not enacted until 1999, *§ 23:302, Added by Acts 1997,* No. 1409, § 1, eff. Aug. 1, 1997, two (2) years after La. R.S. § 23:967, *§ 23:967, Added by Acts 1997, No. 1104, § 1*.

(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La.Rev.Stat. § 23:967(A).

"Reprisal" under the Whistleblower Statute includes firing, layoff, loss of benefits, or any discriminatory action that stems from a protected activity listed in paragraph (A). La. R.S. § 23:967(B). Thus, to prevail under the Whistleblower Statute, the successful plaintiff must demonstrate 1) that she, in good faith, advised her employer; 2) of a prohibited workplace act or practice that violated state law; 3) which she then a) disclosed, or threatened to disclose; b) forwarded to, or testified about before a public body; or c) otherwise objected to, or refused to participate in; and 4) as a result, her employer caused her to suffer an adverse or discriminatory job action. La. R.S. § 23:967. To qualify for protection under the Louisiana Whistleblower Statute, a plaintiff "must establish that the employer engaged in workplace conduct constituting an actual violation of state law." *Wilson v. Tregre*, 787 F.3d 322, 326 (5th Cir.2015); *Encalarde v. New Orleans Ctr. for Creative Arts/Riverfront*, 158 So.3d 826 (La. 2015).

Acadiana C.A.R.E.S. argues that Plaintiff fails to set forth any allegations or references to any statute allegedly violated by the Defendant that she ultimately

27

reported to her supervisor and employer. Plaintiff contends she has alleged multiple incidents of unlawful activities which were reported to Brodie, her supervisor, and her employer. The alleged unlawful activities included: (1) Louisiana Constitution Article 1, §5 "Right to Privacy", La. C.C. Art. 2315, invasion of privacy; La. R.S. 40:4, *et seq*. Sanitary Code; La. R.S. 40:1165.1 "Health Care Information Records"; and La. R.S. 40:1171.1 *et seq*. "Confidentiality of HIV Test Results." *R. 11, ¶11.*

In *Wilson*, 787 F.3d 326–27, the Fifth Circuit affirmed that the plaintiff failed to qualify for protection under the Whistleblower Statute because he failed to demonstrate that the Sheriff's Office actually violated any law. *Id*. Specifically, the court agreed that the district court correctly held that that the attorney-client privilege is a testimonial privilege that a witness or a litigant can assert, not a substantive law that the Sheriff's Office could have violated. The court further agreed that the plaintiff failed to show a violation of the Fourth Amendment or Louisiana wiretapping laws because he failed to raise a genuine issue of fact on whether individuals in the interrogation rooms had a reasonable expectation of privacy. The court specifically stated that "a possible Fourth Amendment violation ... would likely not have triggered protection under the Louisiana Whistleblower Statute because that statute is only triggered by violations of Louisiana law, not federal law." *Id*. at 327. The court further noted, "because *Brady* established a rule of federal law under the Fourteenth Amendment, a *Brady* violation, if there were one, would also

28

not trigger protection under Louisiana's Whistleblower Statute." In its ruling, however, the Fifth Circuit inferred that the plaintiff may have successfully alleged a claim under the Whistleblower Statute if he had properly plead that the Sheriff's Office violated Article 1, section 5 of the Louisiana Constitution, right to privacy, or the due process clause of the Louisiana Constitution.

Defendant contends that "regulations like Louisiana's Sanitary Code, are not covered by the statute." Defendant, however, provides no specific jurisprudential or statutory support for its contention. Rather, Defendant cites *Edmonds v. Smith*, 2016 WL 4010979, at *4 (E.D.La., 2016) in which the court repudiated plaintiff's alleged "violations of city policy, possible ethics violations, and the blatant disregard of Executive Order MJL 10-05: Professional Services Contract Reforming" because none were state laws. *Id.* Here, Plaintiff alleges Louisiana Constitutional law as well as revised statutes, some of which, i.e. the Sanitary Code, are regulations promulgated by statute. As provided by La. R.S. §47:1511, "rules and regulations shall be promulgated pursuant to the provisions of the Administrative Procedure Act and will have the full force and effect of law." LA R.S. 47:1511.

The Court finds that Plaintiff has alleged "an actual violation of state law," and therefore, a plausible claim under the Louisiana Whistleblower Statute.

29

## IV.    CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the Motion To Dismiss For Failure to State a Claim filed by Defendant be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** this 26th day of April, 2019 in Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

30